Mr. Cook. Good morning. May it please the court. I'm Aaron Cook. I'm an attorney at Harrisonburg on the CJA panel in the Western District and here today representing Appellant Steven Perks. Mr. Zirkin and Mr. Woodward are in the room as well. They're on the brief. However, the trial court erred when it denied our Rule 29 motion for judgment of acquittal on the ground of improper venue. This is a case, I think the pertinent facts are pretty clear in the record. On 14 of the counts in the second superseding indictment, there is the same sort of recitation of the crime, and that is that on a certain date in 2020-2021 in the Western District of Virginia, the defendants, Steven Perks, my client, and another person, that person is a couple different people throughout the indictments, but my client and another person knowingly and intentionally distributed, I don't know how to say that, the facts of the case are that on each of these charges, the date in the indictment is the date that the co-defendant dropped the methamphetamine into the mail in Florida. My client the entire time was living in the Florida Department of Corrections and he would give instructions to the second named person in each of these counts to how to obtain and package and mail the methamphetamine in each of these instances. I think it may be important as we argue that eight of these 14 shipments were in fact seized by the government, six were not seized by the government. Of course, venue comes from the Constitution, Article 3 and the 6th Amendment and the Bowens case back in 2000 from this court instructs the district court to identify the conduct constituting the offense to discern the location of the criminal acts. These are the essential conduct elements, not circumstance elements like intent. In each of these situations the conduct of mailing, of distributing the methamphetamine was all performed in the state court. The government points to a couple of different things, I'll talk about it briefly, that I do not think are effective in giving Virginia venue. Can I just ask, I'm sorry, can you just go back in, you said we look at the essential conduct elements? Yes. And what were the conduct elements here? So the conduct elements of the offense in the, I think it's the rape case, the rape case, the Randall case, outlines the conduct of distribution is distributing, which is defined in the code, distributing a certain type of substance. And so it's the act of distributing. And distributing is defined in 21802, subsection 11, it means to deliver a controlled substance or listed chemical. Deliver is defined in subsection 8 as the actual constructive or attempted transfer of a controlled substance or listed chemical. And so it's our position that the delivery is a discrete event, a distinct event that occurred whenever the co-defendant released control of the substance and put it in the mailbox. So does putting it in the mailbox count? Because the second sentence of the venue statute says if you use the mails, but you don't think using the mails is a conduct element. It says an offense involving, it says an offense involving the use of the mails for transportation interstate commerce. And so this court, all the decisions I can see on this particular paragraph are actually things like mail fraud, where the use of the mail is part of the offense. Right, so putting it in the mail was not the conduct. And the district court cited this like in one sentence as an aside, as one basis she could rely on, but she said she wasn't relying on it. So, but the delivery, which is defined as the transfer, that's what we're looking at. Just as a matter of kind of like intuitive common sense, it seems like a transfer isn't finished until it's transferred. Do you know what I'm saying? Well, that's going to be the government's argument. Well, why is that wrong when you think about transfer? I totally understand if you think about delivery maybe, it sounds more like delivered it into the mailbox. But if it's a transfer, just as a matter of common sense. So the ordinary drug transaction would be, I hand you an item of contract, and the delivery is complete. And so it's combined with, first of all, it's about the conduct elements of the defendant. The defendant's conduct elements were in the state of Florida. So that's the starting place. So then the question is, is this a continuing offense? And the circuits are all over the place on this. In fact, there's unpublished opinion from this circuit going both directions. But I don't think there's been any published decisions on the question of whether this is a continuing offense. Counsel, the hypo you gave a little brief when you said, I give you the drugs, and the delivery is complete, right? Yes. What about if I say, here are the drugs, and I want you to give them to X. Is the delivery complete then? So I think we're not talking about a conspiracy. No, we're talking about distribution. I say, Y, here are the drugs. I want you to give them to X. Is it complete when he gives it to Y? Yes, it is. Really, the delivery? Yes. The conduct elements of the defendant we're talking about in your hypothetical are complete when he hands them off. Oh, really? It's not even a question of constructive possession in the sense where I'm telling you, I'm giving to you, but I want you to give it to X. That's not constructive? Your mule, your runner, can then be charged with delivering the second delivery in your scenario. But not the original person who gave the mule the drugs? He, in fact, distributed the drugs to the person he handed them to, yes. Oh, that's interesting. Okay. So, I mean, the problem with making this a continuing offense is kind of, where does it stop, right? So, I drop the drugs in the mail in Florida, and then it travels through Georgia, North Carolina, to Virginia, and is delivered to an address. So, is venue proper if the police were to intercept the drugs in North Carolina? Is that a proper venue? If the recipient in Virginia then carries the drugs to Maryland and distributes them there, is the Florida distributor liable in Maryland? And so, suddenly, we've opened up this huge can of worms by making, for the first time, I think, in this court, if it were to be a published opinion, to making the delivery a continuing offense, where does it stop? And I think the way to do it is to go back to Bowens and say, what is the conduct of the defendant? Where does the conduct of the defendant take place? He's certainly liable for it in Florida. Florida is the appropriate venue for this act of distribution. The government also cites Pinkerton liability as one way to bridge this gap. I would point out, first of all, as I said earlier, eight of these, of course Pinkerton liability is where the defendant in Florida is liable for the actions of his co-defendants in Virginia. I would point out, first of all, that eight of these deliveries were not redistributed. There was no distribution of these items because they were intercepted by the police. And so there's no way to make these eight, I can cite the counts, these eight proper venues through Pinkerton liability because there's no distribution in Virginia. But it's also important, I think, to look at the indictments in this case. The indictment is not that a Virginia defendant was charged with distribution and my client was also part of that count in the indictment through Pinkerton liability. The allegation is that two people in Florida distributed in Virginia. And so I don't think Pinkerton bridges that gap. I think it's a fairly straightforward issue that the court needs to consider and that is whether the court wants to extend the act of distribution further than the act of distribution and if so, how far the court is willing to extend it. And so that's, I think, the issue in front of the court. And we would ask the court to make it clear that it's back to Bowens where the conduct of the defendant occurred is the appropriate place for liability. All right. Thank you. Thank you, counsel. Mr. Giroir. May it please the court, Keiko Giroir on behalf of the United States. If I may begin where Judge Harris actually began and talk about the definition of distribute. Congress broadly defined distribute to include the actual attempted or constructive transfer of drugs. And by so defining the crime, they intended to cover the waterfront of the entire distributed process, not just the second moment in time that the drugs, for instance, may leave the defendant's fingertips. I provide an example to the court that I think illustrates why we think that there is proper venue in the Western District of Virginia here. I first want to clarify actually our Pinkerton point. Our Pinkerton point is simply that Mr. Perks is liable for any distributions that Ms. Groves or Mosley made. And our theory in this case is that because there were attempted, constructive, and actual Ms. Mosley, I'm sorry, and Ms. Grove into the Western District of Virginia for these counts, that venue was proper. Say, for instance, that I was to tell a friend that I was going to actually transfer, to use the phrase in Section 802, actually transfer $100 to him. And I put the $100 in an envelope and handed it to the mailman. I think it would be quite understandable for my friend and everyone else to look at that situation and say, you have not yet completed the actual transfer. You, Mr. Juhan, have started an attempted transfer. Maybe when you handed it to the post office there was a constructive transfer, but there is not an actual transfer until he receives it. And so we think that that example illustrates the words and why distribution is continuing offense insofar as however long it continues. And I want to be very clear with the terminology here about continuing offense. We are not saying that because there is a conspiracy that anyone that does a distribution during a conspiracy, that that crime distribution goes on and on forever. All we're saying by saying continuing offense is that really any crime as a matter of simple metaphysics is going to occur across some space in time. As the venue statute says at 3237A, there's a beginning of a crime, there's a continuation, and there's an end. And so I think the question for the court here is the definitional aspect of that for a distribution. And in some cases, for instance in the State Street example in our brief, that distribution process, that transfer process can be very brief, both temporally and spatially. But in other instances, and we submit in this case, that process can be much more elongated. I also want to speak briefly to the circuit split or purported circuit split. We actually, I would say that it is superficial, and I'd like to explain that. It is true, as we identified in our brief, that the second and third circuits have said that distribution is not a continuing offense. But when you look at the facts and what they're analyzing in those cases, what they're really analyzing is a non-aggregation principle that goes to multiplicity or duplicity. They're saying in those cases the government or the defendant either charged or was arguing should be charged multiple discrete distributions in one aggregate umbrella count. And we agree that that's not appropriate. That would be like us charging counts three through ten as one count. We agree we can't do that. What we do agree with with the second and third circuits is the statement that they've said that each unlawful transfer is a distinct offense. We agree with that. The question is just how long that transfer process for each distinct unlawful transfer exists. So in this case, we think that there's actually not a circuit split that's on the issue once you understand the substance of the continuing offense phrase, which is somewhat misleading considering the text of 3237A, which refers not just to continuation but, of course, the beginning and the end. I'm happy to field any questions that the court may have. Counsel, Mr. Dugan, how do you respond to Mr. Cook's statement that the second sentence of 3237A is not designed or was not designed or commonly used to address drug distribution, that it involves really situations used to the mail or perhaps trucking or whatever? How do you respond on that? Three responses, Your Honor. The first, of course, is you don't have to reach that if you agree with us on the first paragraph of the section. The second response is – the second and third response basically go to case law. Your question and my friend's argument is essentially saying that the categorical approach should apply. We disagree with that because if you look back, for instance, at Damaya from 2018 summarizing the Supreme Court's categorical approach doctrines, what it says is – I'm quoting here – we adopted that in part to avoid the Sixth Amendment concerns of sentencing courts making findings of fact that belongs to juries. We don't have that problem here. This jury – we're not talking about a prior conviction and its categorical elements. We're just talking about the crime at issue that this jury is going to decide. There is not that constitutional avoidance impetus to interpret the statute that way is one point. The second point is I spent some time late on Sunday trying to find a case because I don't think either party was able to find one in the briefing that talked about this. I was able to find three, two that were in our favor and one that was against. I'd like to provide those sites if I could to the court. The first case is a 2018 Ninth Circuit case called OBAK. It's 884F3RD934. It's a case where there was an 841 offense of the drugs being sent between Guam and the state of Washington. In that case, the Ninth Circuit – it's fairly brief, not very deep analysis, but said that under the second paragraph of 3237A, the venue would be proper in either Guam or Washington. The second case I found is a different type of cases and it's actually a line of cases that the Ninth Circuit has adopted the Tenth and Eleventh Circuit's position on regarding crimes that take place on airplane flights. That case is LAZOYA, L-O-Z-O-Y-A 982F3RD648, 2020 from the Ninth Circuit. What those cases say is when there is an airplane in the air and someone commits an offense that there's federal jurisdiction over, that either the takeoff venue or the landing venue is a proper place for venue. Then I would say that the case that comes against us on this actually is an earlier decision from the D.C. Circuit in 2004. It's called Morgan 393F3RD192. In that case, the D.C. Circuit rejected the argument that we've made here about the second paragraph of 3237A. I hope that's answered your question, Your Honor. Can I just give you a chance to respond to your colleague about where is the end point for all of this? What if the drugs get mailed from Florida to Virginia and then, much to the defendant's surprise, the person in Virginia sells them in Maryland? Is Maryland now an appropriate venue? No, Your Honor. I think the key word in your hypothetical, and I think we've mentioned this in our brief, is surprise. It's that the defendant is not going to be liable for a venue in which he's not substantively liable for the crime. If the defendant is working with a co-conspirator and distributes into Virginia to that co-conspirator, but then that person further redistributes in a way that there's not Pinkerton liability for the original defendant, then the defendant is off the hook both for substantive and venue purposes. Similarly, the example we gave in our brief was an unforeseen interception, for instance, by a rival drug dealer. If I distribute into Virginia or am trying to get it to Virginia, but before it gets there, my rival intercepts it in another state, well, I don't have venue or substantive liability in the Western District of Virginia. But if the police intercept it? Does it matter that it's a rival in your hypothetical? What if the police intercept it? I think I might have given an unclear example. If my rival or the police intercepted it in Georgia before it got up here, there's not going to be venue in the Western District of Virginia for the actual passing of the distribution. And I do want to caveat a position that we don't think we need to advance and haven't advanced to win this case, is that some cases, both from this court, such as Nunez, and Brunty is the big case from the 11th Circuit, talk not just about the transfer process, but the kind of acts of arranging the distribution, almost just the coordination of, hey, let's go meet at this house. I think this was the Nunez fact slip. They meet in Maryland and then they go do the distribution in D.C. And this court in Nunez, of course unpublished, said that there's venue for the distribution in Maryland, even though the physical handoff took place in D.C. We're not advancing. We're not saying we need that theory to win. We're just saying you can look at the hard and fat facts that are undisputed here that these drugs reach the Western District of Virginia. If there are no further questions, I appreciate the court's time and we ask that you affirm. Thank you, counsel. Mr. Cook, you have some time reserved. I guess I'll take just a few seconds to point the court back to Bones. And that is what's essential, what's essential the court, the district court does is look at the conduct elements, the essential conduct elements of the case. Is that the same or different than the categorical approach? That's different. So this is about finding venue. And they say look at the elements, the conduct elements. And did any of those conduct elements occur in the Western District of Virginia? But you can see why it sounds like categorical because you're looking at the elements and not what actually happened in this case. Is that right? When you say look at the conduct elements. Right. So the elements of the offense that require conduct. If the defendant committed those in the venue, then it's an appropriate venue. And the Monacan case goes through that, or the North Carolina case, it's a pretty thorough discussion of that. But I think what's important about that is. But I'm sorry, just to go back to the second paragraph in the mail. Yes. You are suggesting that, so when we look at the second paragraph, we only ask whether use of the mails is an element of the crime, not whether in this case the offense involved use of the mails. That's correct. Okay. So that's the categorical approach. I see what you're saying. Okay. Yes. Yes, that's correct. But it was put in there so that mail fraud and those sorts of interstate transfer statutes, crimes, can be prosecuted in both places. But it doesn't mean anytime you use the mail, suddenly venue's different. Okay. And how do I know that? I mean, that seems like it's the question. Right. Whether it is there only for mail fraud cases. I would just say that in the Fourth Circuit, the only time that's been cited has been for mail fraud. Mail fraud type cases. Okay. Cases that actually involve mail. Because that strikes me as sort of an interesting question, whether we ought to be taking a categorical approach to that second sentence or paragraph or whether involving the use of the mails is just, did your crime involve the use of the mails? Right. Okay. And I think, I want to go back to Bowen's and the conduct elements is this. Counsel stated, and I think he's accurate, that if the package had been intercepted by the police in Georgia, then there's no venue in the Western District of Virginia. And I think that's important because I think it would be tempting to say that if a defendant were to write an address that says Virginia on the package, that he's somehow creating venue in Virginia. But, so we're creating it as a continuing offense. But, I think that by admitting that if it doesn't make it, then there's no venue, it points us back to Bowen. And we find venue or we find the defendant's conduct. And so that's one thing I just wanted to respond to. Of course, if there's any other questions that we have . . . So you don't believe that distribution is a continuing offense at all? That's correct. All right. When it's accomplished, once the item is relinquished. Relinquished. So that means that, so it's kind of somewhat of a quirky hypo, but if someone is staying on the border of West Virginia and Virginia and the provider is in Virginia and the recipient is in West Virginia, if he throws it across the line to him, then you'll say that's no distribution, no venue in West Virginia, because he released it in Virginia. I think that's an interesting hypothetical. I told you it was quirky. In the sense that . . . I admitted that, but you said once he releases it, so then you would say there's no venue in West Virginia because he threw it in Virginia, but it landed in West Virginia in the person's hands, right? I mean, tossing it versus handing it, I don't . . . We're tossing it. You'd have to say under your position, you would say there's no venue in West Virginia. That's correct. Okay. Although, that may be an exception to . . . All right. Anything else? No, sir. Thank you. He's good? All right. Thank you. Mr. Cook, I note that you're a court opponent. In honor of that, you're also part of our council regiment of lawyers who do that, so we doubly thank you for being here and taking these cases. It's very important to the court, and we let you know that we appreciate it very much. Thank you. Of course, Mr. . . . We acknowledge your representation of the United States. We'll come . . . Well, first, we'll ask the clerk to adjourn the court until tomorrow morning, and then we'll come down to Greek Council.
judges: Roger L. Gregory, Pamela A. Harris, Barbara Milano Keenan